STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

LAUREN M. HARDING (CABN 308029)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6938
    FAX: (415) 436-7234
    Lauren.Harding@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:21-mj-71822 MAG |
| Plaintiff, | **UNITED STATES' MOTION FOR DETENTION** |
| v. | Date: November 26. 2021 |
| ALBERT COLLINS, | Time: 10:30 a.m. |
| Defendant. | Court: Honorable Jacqueline S. Corley |

**I.    INTRODUCTION**

Defendant Albert Collins, a convicted felon and known gang member, was on active Post Release Community Supervision ("PRCS"), at the time he was caught with a loaded pistol on November 2, 2021. Despite being subject to a warrantless search and seizure condition, the defendant ran from the police and bit an officer in the thigh during the arrest. And although both his PRCS and status as a felon prohibited him from possessing a firearm, the defendant was found with a pistol with a 15-capacity magazine and 14 live rounds on his person.

His most recent offense is but one among several. The defendant's criminal history, which began over a decade ago and has continued to escalate ever since, includes four convictions, including two firearms offenses, within the past five years.

The defendant's proven track record of disobeying the conditions of release demonstrate that he is serious flight risk if he is released pretrial. His multiple firearms offenses similarly demonstrate that he poses a serious danger to the community. To safeguard his appearance at trial and the community, the Government respectfully requests that the defendant be detained.

**II.    FACTS**

    **A. The Defendant Flees Police and Is Caught with a Loaded Pistol while on Active PRCS**

On November 2, 2021, two San Francisco Police Department officers recognized the defendant—a known member of the "Down Below Gangsters" criminal street gang—walking across Sunnydale Avenue in San Francisco. The officers knew that the defendant was actively on Post Release Community Supervision ("PRCS"), which is akin to parole with a warrantless search condition.[1] The officers watched the defendant enter a car and start driving. A query showed the car's registration had expired and another query confirmed that the defendant was on active PRCS.

Using their forward-facing red light, the officers signaled the defendant to stop. The defendant indeed stopped—but immediately fled from officers. He northbound past a parked Audi and towards

---

[1] *See United States v. Miller*, No. 4:15-CR-00197-JD-1, 2016 WL 80565, at *2 (N.D. Cal. Jan. 7, 2016) (treating PRCS as comparable to parole, rather than probation).

UNITED STATES' DETENTION MEMORANDUM    2
3:21-mj-71822 MAG

nearby residences.  One officer eventually caught up to the defendant and a physical tussle ensued, during which the defendant bit the arresting officer's thigh.  As he was being handcuffed, the defendant spontaneously said "y'all got me" and referenced a gun purportedly in a garbage can "up there."

In the defendant's pant leg, the officers found a semi-automatic pistol with a 15-round capacity magazine and 14 rounds of live ammunition.  An officer found a second firearm (a personally manufactured firearm) under the same Audi that the defendant was seen running past.[2]

The state charged the Defendant with various offenses, which were dismissed upon the filing of the pending federal complaint.  The pending complaint charges Collins with one count of violating 18 U.S.C. § 922(g)(1) for being a felon in possession of a firearm and ammunition.  *See* ECF No. 1.

### B. Summary of the Defendant's Criminal History

Since 2008, the defendant has had numerous interactions with the criminal justice system.  Of particular relevance, in 2017, the defendant was convicted of possessing a firearm as a prohibited person (Cal. Pen. Code § 29820(B)), for which he received three years' probation and 4 days jail.  Also in 2017, he was convicted of and second degree robbery (Cal. Pen. Code § 211), for which he received three years' probation and 25 days jail.

In April 2019, the defendant was convicted of grand theft (Cal. Pen. Code § 487(a)) and possessing ammunition as a prohibited person (Cal. Pen. Code § 30305(a)(1)), for which he was sentenced to 32 months imprisonment and 16 months imprisonment, respectfully.

The defendant is a member of the Down Below Gangsters ("DBG") criminal street gang.

### III. LEGAL STANDARD

Under the Bail Reform Act of 1984, as amended, the Court must detain a defendant pretrial without bail where "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community."  18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary for the government to prove both.  *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).  A finding that a defendant is a danger to the community must be supported by clear

---

[2] This gun is pending forensic testing.  The defendant has refused to comply with the state search warrant for his DNA that would facilitate such testing.

UNITED STATES' DETENTION MEMORANDUM    3
3:21-mj-71822 MAG

and convincing evidence, but a finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Id.*

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Those factors are: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

## IV.   ARGUMENT

### A. The Defendant's Flight from Officers, Coupled with His Willingness to Offend While on Parole or Probation, Demonstrates He Is Significant Flight Risk.

The best evidence of the defendant's future flight risk is his past conduct. And his past conduct demonstrates that he is determined to avoid accountability. When officers signaled the defendant to stop on November 2, 2021, the defendant instead ran away to evade their pursuit. Evading an officer demonstrates the defendant is a flight risk if he is released pretrial. *See United States v. Murrington*, 2013 WL 2443260, at *2 (N.D. Cal. June 4, 2013) (detaining a defendant as a flight risk when he attempted to flee and resisted arrest). But his conduct is doubly troubling because of the defendant's active PRCS status, which subjected him to warrantless searches and seizures and to a condition not to be *near* firearms (much less have one on his person). *See* Cal. Pen. Code § 3453(f) (PRCS "shall include the following conditions . . . The person, and his or her residence and possessions, shall be subject to search at any time of the day or night, with or without a warrant, by an agent of the supervising county agency or by a peace officer."); *id.* § 3453(m) (PRCS requires the person to "not be in the presence of a firearm or ammunition"). Detention is justified for a defendant who, as here, flee from officers while on active parole. *See United States v. Daniels*, 2020 WL 10731886, at *5 (N.D. Cal.

Sept. 28, 2020) (detaining a defendant charged with § 922(g)(1) who was on active parole for a prior firearm offense and fled from the arresting officers).

The defendant's willingness to re-offend despite court intervention appears to be a pattern, too. In 2017, the defendant was convicted of two offenses (including a firearms offense) and was sentenced to three years' probation. But by 2019 he was re-offending again and convicted of two additional offenses (including another firearms offense).

The defendant has again and again shown his inability (or unwillingness) to abide by terms of release or law enforcement commands, or to be deterred by court-imposed sentences.[3] That the defendant is facing a significant prison term here only amplifies his flight risk.

### B. The Weight of the Evidence and the Nature and Circumstances of the Current Offense Demonstrate that the Defendant Poses a Danger to the Community.

The weight of the evidence and the nature and circumstances of the offense favor detention. *See* 18 U.S.C. § 3142(g)(1), (g)(2). As detailed further in Sgt. Matthew Dudley's complaint, Defendant has at least one prior conviction for which he was sentenced over a year; the pistol and ammunition were manufactured outside of California; and defendant was found with the pistol literally stuck in his pant leg. *See* ECF 1, Dudley Affidavit ¶¶ 6-17. The danger posed by firearms offenses, including those under 18 U.S.C. § 922, is also well established. *See United States v. Torres*, 911 F.3d 1253, 1264 (9th Cir. 2019) (Congress passed § 922(g) to "disarm groups whose members Congress believes are unable or unwilling to conduct themselves in conformity with the responsibilities of citizenship.") (citation omitted). And this was not just an ordinary gun: It was pistol outfitted with a 15-capacity magazine with 14 live rounds. The defendant not only possessed a 15-capacity magazine gun, but also resorted to physical violence when he was apprehended by biting the officer.

Nor is this offense an outlier; possessing a firearm seems to be part-and-parcel of his criminal lifestyle. In the past five years alone, the defendant has committed four offenses, including two firearms

---

[3] As noted, the defendant has refused to abide by a state search warrant to provide a DNA sample that will be used to test whether the personally manufactured firearm found beneath an Audi on his flight path contained his DNA. Although seemingly insignificant, the defendant's inability to comply with routine law enforcement demands illustrates his inability to comply more significant conditions of release.

UNITED STATES' DETENTION MEMORANDUM    5
3:21-mj-71822 MAG

offenses. The defendant has shown that no set of court-imposed sentences or parole conditions will stop him from possessing firearm.

The defendant's association with the criminal street gang Down Below Gangsters ("DBG") is also well documented. The defendant, a rapper who goes by the pseudonym "A.B. Milli," appears in several YouTube videos rapping about violence and firearms possession. For instance, in a September 11, 2014 YouTube video, the defendant raps "A.B. Milli getting guap . . . I shoot these shells and yeah they hot [*referring to ammunition*] . . . Keep your b**** on the strip in Sunny lot . . ."[4] In another verse, he raps "Free Flig [*referring to a member of DBG gang*] though, let all of my homies out . . . Nowadays [*epithet*] snitching like they Bodie now . . . We used to rock revolvers now we rock with 40's now [*referring to 40-caliber guns*]." In another video, the defendant, referring to dead members of a rival gang, states: "When I get out, I'm going to have all you dead hommies tatted on me. . . . I'm going to have a graveyard of all the [*epithet*] we took."[5] The defendant's lyrics provide insight into his lifestyle and community ties, marked by associating with violent gang members and firearms possession.

V.  **CONCLUSION**

There are no set of conditions that will reasonably assure the appearance of the defendant at court proceedings or ensure the safety of the community. The defendant should be detained.

DATED:    November 24, 2021              Respectfully submitted,

                                         STEPHANIE M. HINDS
                                         Acting United States Attorney


                                          /s/ *Lauren M. Harding*
                                         LAUREN M. HARDING
                                         Assistant United States Attorney

---

[4] *See* A.B. Milli – Hot N****, YouTube, *available at* https://www.youtube.com/watch?v=MqU_Esfhk6s (Sept. 11, 2014). Epithets have been removed or altered and are marked by ellipses or asterisks.

[5] The video appears at minute 7:00 of a YouTube video titled "Swamp Storiez: Ep.1 Sunnydale vs. Towerside," *available at* https://www.youtube.com/watch?v=nP5jx7wHCRk (posted Jan. 2, 2021). The Government has not verified the date of the video in which the defendant appears or any other information or representations in the video.