PAGES 1 - 14

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JACQUELINE SCOTT CORLEY

| | |
|---|---|
| UNITED STATES OF AMERICA,   )<br>                             )<br>          PLAINTIFF,         )<br>                             )<br>  VS.                        )   CASE NO. 21-CR-00463<br>                             )<br>ALBERT COLLINS,              )<br>                             )   VIA ZOOM VIDEOCONFERENCE<br>          DEFENDANT.         )   MONDAY, JANUARY 10, 2022<br>                             )<br>_____) | |

**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND**

**RECORDING  12:17 P.M. - 12:35 P.M.**

**APPEARANCES**:

**FOR PLAINTIFF**          UNITED STATES ATTORNEY'S OFFICE
                           450 GOLDEN GATE AVENUE
                           SAN FRANCISCO, CALIFORNIA  94102
                      BY:  **LAUREN HARDING, AUSA**


**FOR DEFENDANT**          OFFICE OF THE FEDERAL PUBLIC DEFENDER
                           450 GOLDEN GATE AVE., FLOOR 19
                           SAN FRANCISCO, CA 94102
                      BY:  **WHAYEUN KIM, AFPD**
                           **ANGELA CHUANG, AFPD**


*TRANSCRIBED BY:  JOAN MARIE COLUMBINI, CSR #5435, RPR*
                  *RETIRED OFFICIAL COURT REPORTER, USDC*

```
 1  MONDAY, JANUARY 10, 2022                              12:17 P.M.
 2  (TRANSCRIBER'S NOTE: DUE AT TIMES TO COUNSELS' FAILURE TO
 3  IDENTIFY THEMSELVES WHEN SPEAKING, CERTAIN SPEAKER
 4  ATTRIBUTIONS ARE BASED ON EDUCATED GUESS.)
 5                              ---o0o---
 6              ELECTRONICALLY RECORDED PROCEEDINGS
 7         THE CLERK:  CALLING CRIMINAL MATTER 21-463, UNITED
 8  STATES VERSUS ALBERT COLLINS.
 9         PARTIES, PLEASE STATE YOUR APPEARANCES FOR THE
10  RECORD.
11         MS. HARDING:  GOOD AFTERNOON, YOUR HONOR.  GOOD
12  AFTERNOON, EVERYONE.  LAUREN HARDING ON BEHALF OF THE UNITED
13  STATES.
14         THE COURT:  GOOD AFTERNOON.
15         MS. KIM:  GOOD AFTERNOON, YOUR HONOR.  CHLOE KIM AND
16  ANGELA CHUANG ON BEHALF OF ALBERT COLLINS, WHO IS PRESENT, IN
17  CUSTODY, AND CONSENTS TO APPEARING BY VIDEO IN LIGHT OF THE
18  PANDEMIC.
19         THE COURT:  GOOD MORNING.  GOOD MORNING, MR. COLLINS.
20         THE DEFENDANT:  GOOD MORNING, YOUR HONOR.
21         MS. FRIESEN:  GOOD AFTERNOON, YOUR HONOR.  PEPPER
22  FRIESEN FOR PRETRIAL SERVICES.
23         THE COURT:  GOOD AFTERNOON.
24         ALL RIGHT.  MS. KIM, I UNDERSTAND YOU ASKED FOR THIS
25  HEARING BASED ON A CHANGE IN CIRCUMSTANCES WITH RESPECT TO
```

1   MR. COLLINS' DETENTION, SO PLEASE GO AHEAD.

2           **MS. KIM:**  YES.  THANK YOU, YOUR HONOR.

3           SO AS THE COURT MAY REMEMBER, WE HAD A DETENTION

4   HEARING BACK IN NOVEMBER, AND, AT THAT TIME, WE DIDN'T YET HAVE

5   A RESIDENTIAL TREATMENT PROGRAM FOR MR. COLLINS.

6           SINCE THEN, WE HAVE WORKED WITH THE SOCIAL SERVICES

7   WORKER IN OUR OFFICE TO FIND THE BEST PROGRAM FOR HIM, AND WE

8   HAVE IDENTIFIED POSITIVE DIRECTIONS TRP, WHICH IS A RESIDENTIAL

9   HOLISTIC TREATMENT PROGRAM.  AND MR. COLLINS HAS BEEN

10  INTERVIEWED BY THE DIRECTORS OF POSITIVE DIRECTION AND HAS BEEN

11  ACCEPTED TO THE PROGRAM.

12          I CAN PROVIDE A LITTLE DETAIL OF THE PROGRAM, BUT

13  THERE ARE THE DIRECTORS FROM POSITIVE DIRECTION ON ZOOM IF THE

14  COURT HAS ANY SPECIFIC QUESTIONS ABOUT THE PROGRAM.

15          BUT I WANTED TO SHARE -- UNLESS THE COURT HAS ANY

16  SPECIFIC QUESTIONS, I WANTED TO SHARE WHY I BELIEVE THIS IS A

17  SIGNIFICANT ENOUGH CHANGE AND WHY THE COURT SHOULD RELEASE

18  MR. COLLINS.

19          AS THE COURT MIGHT REMEMBER IT, BACK IN THE PREVIOUS

20  DETENTION HEARING, THE COURT FOUND THAT MR. COLLINS DOES NOT

21  POSE A SIGNIFICANT FLIGHT RISK, BUT THE COURT DID NOTE SOME

22  CONCERN REGARDING THE DANGER TO THE COMMUNITY, AND,

23  SPECIFICALLY, THE FACT THAT MR. COLLINS WAS BACK IN THE

24  SUNNYDALE NEIGHBORHOOD AND HE WAS ARRESTED WITH A GUN SHORTLY

25  AFTER HIS RELEASE FROM STATE CUSTODY.

1    WHAT I HAVE LEARNED SINCE THAT CONVERSATION -- I'VE
2 SPOKEN WITH MR. COLLINS MANY TIMES SINCE THEN AND VARIOUS
3 FAMILY MEMBERS WHO ARE ON ZOOM TODAY AND ARE INCREDIBLY
4 SUPPORTIVE OF MR. COLLINS.
5    WHAT THEY'VE SHARED IS, WHEN HE WAS RELEASED FROM
6 CUSTODY, MR. COLLINS REALLY DID TRY HARD TO TURN THINGS AROUND,
7 AND HE TRIED REALLY HARD TO STAY OUT OF SUNNYDALE.  AND SO WHAT
8 I DIDN'T KNOW AT THE TIME WAS HE ACTUALLY WENT TO LIVE WITH MS.
9 JANINA STEEGER, WHO, I BELIEVE, ALSO VOLUNTEERED -- I DID NOT
10 ACTUALLY ASK HER, BUT SHE VOLUNTEERED TO WRITE A LETTER OF
11 SUPPORT JUST TO INDICATE HOW SHE FELT ABOUT MR. COLLINS.
12    **THE COURT:**  YES, I READ THE LETTER.
13    **MS. KIM:**  THANK YOU.
14    SO MR. COLLINS LIVED WITH MS. STEEGER IN STOCKTON,
15 AND HE WAS ACTUALLY DOING WELL, BUT, UNFORTUNATELY, THE STATE
16 PROBATION OFFICER INDICATED THAT MR. COLLINS HAS TO RESIDE IN
17 SAN FRANCISCO.
18    SO THEN HE HAD TO MOVE, AND HE BRIEFLY LIVED WITH HIS
19 MOTHER, WHO ALSO WASN'T LIVING AT SUNNYDALE AT THE TIME, BUT,
20 UNFORTUNATELY, IN OCTOBER SHE PASSED AWAY.
21    SO IT WAS ONLY AFTER MR. COLLINS TRYING TO FIND OTHER
22 STABLE HOUSING OUTSIDE OF SUNNYDALE THAT HE FOUND NO OTHER
23 OPTION AND DECIDED TO LIVE WITH HIS AUNT, NICHELLE FULBRIGHT,
24 IN SUNNYDALE.
25    AND, OF COURSE, I'M NOT EXCUSING WHAT HE'S CHARGED

```
 1   WITH JUST SIMPLY BY THE FACT HE WAS IN SUNNYDALE, BUT I DID
 2   WANT TO PROVIDE THIS CONTEXT FOR THE FACT HE REALLY DID WANT TO
 3   TURN THINGS AROUND AFTER SPENDING SO MUCH TIME IN STATE
 4   CUSTODY.
 5           AND HE ALSO HAD BEEN WORKING WITH THE STATE PROBATION
 6   OFFICERS AT THE TIME TO FIND A THERAPIST, AND THEY WERE IN THE
 7   PROCESS OF THAT.
 8           MR. COLLINS HAS A LONG AND DIFFICULT CHALLENGING
 9   CHILDHOOD WITH A LOT OF TRAUMA, AND PART OF THIS PROGRAM, THE
10   POSITIVE DIRECTIONS, THAT WOULD REALLY SERVE HIM WELL, IN
11   ADDITION TO GIVING HIM HOUSING IS THAT IT'S A HOLISTIC PROGRAM
12   THAT PROVIDES A LOT OF THERAPY.  IT IS ALSO AN ALL-SOBER
13   PROGRAM, AND THEY ARE AMENABLE BE TO DOING REGULAR DRUG TESTING
14   AND WORKING WITH PRETRIAL ON THAT.
15           AND I BELIEVE, TO THE EXTENT THERE IS ANY ADDITIONAL
16   CONCERN REGARDING HIS LOCATION, THEY'RE ALSO AMENABLE TO
17   MR. COLLINS BEING PLACED ON ANKLE MONITOR IN THE PROGRAM.
18           **THE COURT:**  MS. HARDING?  WELL, ACTUALLY, LET ME ASK
19   MS. FRIESEN IF THEY'RE FAMILIAR WITH THE PROGRAM AND IF THEY
20   HAVE A POSITION.
21           **MS. FRIESEN:**  YES, YOUR HONOR.  I SPOKE WITH OFFICER
22   ELDER, WHO IS OUR DRUG AND ALCOHOL TREATMENT SPECIALIST.  HE
23   ALSO HAS A CASE WHERE THIS HAS BEEN PROPOSED, SO HE HAD SPOKEN
24   WITH THE PROGRAM.
25           WE DO HAVE A COUPLE OF OUR CLIENTS WHO ARE CURRENTLY
```

1  THERE.  OUR ONLY CONCERN IS BECAUSE THIS IS A NEWER PROGRAM,
2  THERE HAVEN'T BEEN ANY GRADUATES YET, SO WE'RE NOT SURE OF THE
3  OVERALL SUCCESS OF THE PROGRAM.  BUT WE DO CURRENTLY HAVE
4  CLIENTS THERE, SO IT IS AN OPTION.  HE HAS SPOKEN TO THE
5  DIRECTOR OF THE PROGRAM AND SPOKEN WITH THEM ABOUT THE
6  REQUIREMENTS OF BEING ON PRETRIAL RELEASE WHILE BEING THERE.
7          WE ARE CONCERNED WITH THE RISKS THAT ARE OUTLINED IN
8  THE INITIAL BAIL REPORT, SPECIFICALLY THAT THERE IS NO VIABLE
9  SURETY.  MS. KIM DID PROVIDE ME WITH CONTACT INFORMATION FOR
10 MS. STEEGER, WHO IS WILLING TO SIGN.  I GAVE HER A CALL AND
11 LEFT HER A VOICEMAIL THIS MORNING, BUT HAVE NOT BEEN ABLE TO
12 SPEAK WITH HER TO DISCUSS HER WILLINGNESS -- OR HER WILLINGNESS
13 TO SIGN ON A BOND AND WHATNOT.
14         **THE COURT:**  ALL RIGHT.  MS. HARDING?
15         **MS. HARDING:**  YOUR HONOR, ALTHOUGH THE ADDITIONAL
16 FACTS THAT MS. KIM PRESENTS CERTAINLY HELPS US UNDERSTAND
17 DEFENDANT'S CONDUCT IN THE FALL, I DON'T BELIEVE THAT THEY
18 EITHER JUSTIFY IT, NOR DID THEY ARISE TO CHANGED CIRCUMSTANCES
19 TO JUSTIFY THIS COURT DEVIATING FROM ITS VERY RECENT AND
20 WELL-REASONED DECISION DETAINING THE DEFENDANT.
21         AFTER ALL, THE COURT MADE ITS DECISION ON
22 NOVEMBER 26TH, 2021, WHICH IS JUST A MERE MONTH AND A HALF AGO.
23 AND AT THE TIME THE COURT MADE ITS DECISION, YOUR HONOR KNEW
24 ABOUT THE DEFENDANT'S SUBSTANCE ABUSE AND MENTAL HEALTH ISSUES,
25 AS OUTLINED IN THE REPORT PREPARED BY MS. FRIESEN AND AS

```
 1    ARGUMENT BY MS. KIM.
 2              AND, IN FACT, IN YOUR ORDER, YOUR HONOR, IT MENTIONS
 3    THE POSSIBILITY OF A RESIDENTIAL DRUG TREATMENT PROGRAM AND
 4    HALFWAY HOUSE, AND YOUR HONOR DECLINED TO PURSUE BOTH OF THOSE
 5    OPTIONS, DETERMINING, INSTEAD, THAT MR. COLLINS IS A DANGER TO
 6    THE COMMUNITY.  AND HE ISN'T JUST THAT, GIVEN HE COMMITTED THIS
 7    OFFENSE A MERE TWO MONTHS AFTER BEING RELEASED FROM STATE
 8    CUSTODY AND HAS TWO PRIOR OFFENSES FOR FIREARMS, ALONG WITH TWO
 9    OTHER OFFENSES, INCLUDING A ROBBERY OFFENSE AND GRAND THEFT
10    CONVICTION.
11              SO THE FACT THAT HE WAS ON ACTIVE PAROLE AT THE TIME
12    OF THE EVENT, AND GIVEN THE VERY RECENT DECISION OF YOUR HONOR
13    DEMONSTRATING THAT HE'S A DANGER TO THE COMMUNITY, I SEE NO
14    NEED TO DEVIATE FROM THAT.
15              AND ONE LAST POINT AND CORRECTION, AS I READ YOUR
16    HONOR'S ORDER, IT DID NOT REACH THE ISSUE OF WHETHER
17    MR. COLLINS WAS A FLIGHT RISK.  IT ONLY REACHED THE ISSUE AS TO
18    WHETHER HE WAS A DANGER TO THE COMMUNITY, AND YOU DETERMINED
19    THAT HE WAS.
20              BUT AS AN ALTERNATIVE BASIS TO KEEP MR. COLLINS
21    DETAINED, I BELIEVE HE IS A FLIGHT RISK FOR THE REASONS
22    DEMONSTRATED IN THE GOVERNMENT'S PRIOR MOTION AND IN PRETRIAL
23    SERVICES' MOTION.  HE RAN AWAY FROM OFFICERS WHEN HE WAS TRYING
24    TO BE APPREHENDED, DIDN'T CONSENT TO A SEARCH, EVEN THOUGH HE
25    WAS ON ACTIVE PRCS SUPERVISION.
```

1          **THE COURT:** ALL RIGHT. THANK YOU.
2          SO I'M GOING TO ASSUME THAT MS. STEEGER, IF I'M
3 PRONOUNCING THAT CORRECTLY, WOULD SIGN ON TO A BOND. SO THAT'S
4 FINE. I'LL ASSUME THAT GIVEN HER LETTER AND HER LONG TIME
5 SUPPORT FOR MR. COLLINS.
6          AND I DO THINK THIS PROGRAM PROBABLY WOULD BE VERY
7 BENEFICIAL FOR MR. COLLINS. WE DEFINITELY HAVE TO DO SOMETHING
8 DIFFERENT BECAUSE WHAT'S BEEN DONE IN THE PAST HASN'T WORKED,
9 BUT PRETRIAL IS NOT THE TIME TO DO IT, BECAUSE THERE'S SIMPLY
10 NOTHING THAT HE'S DEMONSTRATED THAT SHOWS THAT HE WOULD COMPLY,
11 AND, ALTHOUGH HE WAS FOUND NOT WITH ONE GUN, BUT TWO, INCLUDING
12 ONE BEING A GHOST GUN, AND THAT -- YOU KNOW, THAT SIMPLY IS
13 NOT -- THERE'S NO EXPLANATION FOR THAT. THAT'S A VERY
14 INTENTIONAL, DELIBERATE ACT THAT -- YOU KNOW, IF THE ISSUE WAS,
15 WELL, HE WAS FOUND AT SUNNYDALE, THAT MAKES SENSE.
16          HE'S HAD SEVERE TRAUMA IN HIS LIFE THAT NEEDS TO BE
17 ADDRESSED THROUGH COUNSELING. I ONE HUNDRED PERCENT AGREE WITH
18 YOU, MS. KIM, BUT THE PROBLEM IS THAT AT WHAT POINT ARE WE ABLE
19 TO DO THAT, THAT THE DANGER TO THE COMMUNITY CAN BE
20 SUFFICIENTLY MITIGATED, AND, AT THIS POINT, GIVEN HIS RECORD,
21 WHICH IS THE MOST PROBATIVE EVIDENCE OF HOW HE WOULD PERFORM,
22 I'M NOT PREPARED TO RECONSIDER MY POSITION.
23          BUT GO AHEAD, MS. KIM.
24          **MS. KIM:** THANK YOU, YOUR HONOR. LET ME JUST ADDRESS
25 A COUPLE OF QUICK POINTS.

1    SO, FIRST REGARDING THE SURETY, I BELIEVE
2  MS. FULBRIGHT, WHO PREVIOUSLY WAS WILLING TO SERVE AS A SURETY,
3  IS STILL WILLING TO SERVE AS SURETY, AND I'M NOT SURE IF
4  PRETRIAL HAS DETERMINED IF SHE IS NOT QUALIFIED TO BE A SURETY.
5  BUT, IN ADDITION, MS. STEEGER IS ON ZOOM TODAY AND IS WILLING.
6    AND REGARDING YOUR COURT'S POINT ABOUT THE GUN, I
7  KNOW WE DISCUSSED THIS AT LENGTH AT THE LAST HEARING, SO I WILL
8  NOT REPEAT MYSELF, BUT I DID JUST WANT TO CLARIFY FOR THE
9  RECORD THAT WHILE THE GHOST GUN IS INDICATED IN THE POLICE
10 REPORT, IT HAS NOT BEEN TIED TO MR. COLLINS, AND HE IS NOT
11 CHARGED WITH A GUN IN THIS CASE.  HE WAS ONLY CHARGED WITH THE
12 GUN THAT WAS FOUND ON HIM.
13   **THE COURT:** BUT THAT'S THE GUN THAT HE DIDN'T -- AT
14 LEAST ACCORDING TO THE PROPERTY, HE DIDN'T DISCLOSE THAT GUN,
15 RIGHT?  HE SAID THAT THERE WAS A GUN.  DID YOU GUYS GO TO THE
16 GARBAGE?
17   **MS. KIM:** BUT THAT WAS NOT THE PLACE WHERE THEY FOUND
18 -- I BELIEVE THE CIRCUMSTANCE WAS HE WAS TRYING TO DEFLECT
19 ATTENTION FROM THE OFFICER BECAUSE, OF COURSE, HE WAS SCARED.
20   **THE COURT:** BECAUSE HE HAD A GUN ON HIM, AND I DON'T
21 KNOW WHAT HE WAS DOING.  BUT TO MS. HARDING'S POINT, HE
22 WASN'T -- HE WASN'T -- HE WASN'T AT THAT POINT -- AND I'VE HAD
23 OTHER CASES WHERE, YOU KNOW, OKAY, YOU GOT ME, HERE IT IS, YOU
24 KNOW, I'M ON PROBATION, I'M ON THIS.  HE FLED.
25   I MEAN, HE HAD THE GUN UNDER -- IT'S JUST SUCH A

```
 1   DANGEROUS, DANGEROUS, DANGEROUS SITUATION.  AS WE ALL KNOW,
 2   WE'RE READING ABOUT THESE DEATHS THAT ARE HAPPENING WHEREVER
 3   THEY ARE, RIGHT?
 4             AND THERE'S JUST NOTHING RIGHT NOW IN HIS HISTORY.  I
 5   KNOW HE HAS SUPPORT THAT VERY MUCH WANT HIM TO TURN HIS LIFE
 6   AROUND, AND THEY WILL BE THERE WHEN THESE CHARGES ARE RESOLVED,
 7   AND HE WILL NEED THAT COUNSELING.
 8             AND I THINK HE CAN TURN HIS LIFE AROUND, BUT THE
 9   PROBLEM IS LESS THAN TWO MONTHS AFTER HE WAS RELEASED, AFTER HE
10   GOT -- IN 2017, HE GOT PROBATION, HE GOT A CHANGE, AND THEN HE
11   WAS CONVICTED OF A ROBBERY.  HE GOT 32 MONTHS.  HE WAS
12   RELEASED.  AND THEN TWO MONTHS LATER HE WAS FOUND WITH AT LEAST
13   ONE GUN, ALTHOUGH HE TOLD OFFICERS ABOUT A SECOND GUN, OKAY.
14   BUT HE WAS FOUND WITH -- AND I BELIEVE IT WAS LOADED, AND MAYBE
15   A SEMI-AUTOMATIC, WHAT DIFFERENCE DOES IT MAKE, RIGHT?  IT'S
16   JUST TOO DANGEROUS FOR HIS LIFE, HIS LIFE, AS WELL AS OTHER
17   PEOPLE AROUND.
18             BUT I DO HOPE -- AND YOU SHOULD ARGUE THIS, DEPENDING
19   ON HOW HIS CASE RESOLVES, THAT SOMETHING BE DONE SO THAT WHEN
20   HE IS RELEASED, HE ABSOLUTELY GOES INTO A PROGRAM LIKE THIS SO
21   HE GETS THE TREATMENT HE NEEDS AND THE STRUCTURE THAT HE NEEDS
22   TO TURN THINGS AROUND.  AT THIS POINT, GIVEN HOW SOON AFTER
23   RELEASE HE COMMITTED A VERY DANGEROUS CRIME AND HAD THE GUN, I
24   AM NOT SATISFIED THAT HE DOESN'T POSE A RISK.
25             BUT I ACCEPT THAT HE HAS FAMILY THAT HAS BEEN
```

1   SUPPORTIVE ALL THIS TIME, RIGHT, BUT THEIR LOVE AND SUPPORT AND
2   DESIRE HE TURNS THINGS AROUND WASN'T ENOUGH FOR HIM ON THAT DAY
3   IN NOVEMBER TO NOT POSSESS THAT GUN.
4              **MS. KIM:**  I JUST NOTE THE MAJOR DIFFERENCE WAS HE
5   WAS, YOU KNOW, HOMELESS AT THE TIME, AND I THINK A BIG PART OF
6   IT WAS HE DID NOT HAVE THE HOUSING AND THE STRUCTURE AND
7   GUIDANCE.  AND, YOU KNOW, THE FAMILY MEMBERS WHO ARE WILLING TO
8   SERVE AS SURETIES AND WHO ARE ON ZOOM, I'VE SPOKEN TO EACH OF
9   THEM, AND I THINK THEY ALL HAVE TOLD ME HOW IMPORTANT AND HOW
10  MUCH OF A DIFFERENCE THEY BELIEVE A PROGRAM LIKE THIS WOULD
11  MAKE.
12             SO I DID WANT TO NOTE THAT IS A MAJOR DIFFERENCE, AND
13  I DO BELIEVE THAT IF MR. COLLINS HAD GOTTEN THE OPPORTUNITY TO
14  PARTICIPATE IN A RESIDENTIAL PROGRAM LIKE THIS THE FIRST TIME
15  AROUND, I BELIEVE THAT WE MIGHT BE FACING A REALLY DIFFERENT
16  SITUATION.
17             AS I INDICATED, I THINK HE TRIED WHAT HE COULD AT THE
18  TIME TO TRY TO TURN THINGS AROUND, AND, UNFORTUNATELY, I THINK
19  HE WAS NOT GIVEN THE SAME OPPORTUNITY.
20             **THE COURT:**  WELL, THAT OPPORTUNITY WASN'T AVAILABLE
21  TO HIM.  YOU SAID GIVE.  I DON'T THINK WE SHOULD TALK ABOUT
22  GIVING, RIGHT?  THE OPPORTUNITY WASN'T AVAILABLE TO HIM.  AND,
23  AGAIN, IF WE WE'RE JUST TALKING ABOUT WHERE HE WAS -- BUT HE
24  HAD A LOADED WEAPON IN HIS LEG PANTS, AND HE RAN AWAY TWO
25  MONTHS AFTER HE WAS RELEASED, AND THAT WAS NOTWITHSTANDING THAT

```
 1    HE HAD THE SUPPORT OF HIS FAMILY, RIGHT?
 2              SO THE SURETIES, I THINK, WHILE I KNOW THEY BELIEVE
 3    IN HIM AND WANT HIM TO TURN THINGS AROUND, AS DO I, I JUST
 4    CAN'T GIVEN THE RECORD THAT HE HAS HERE AND THE VERY
 5    DANGEROUSNESS OF HIS CONDUCT.  SO I VERY MUCH APPRECIATE --
 6              **THE DEFENDANT:**  CAN I SAY SOMETHING?
 7              **THE COURT:**  YOU SHOULD ASK MS. KIM FIRST IF YOU CAN
 8    SAY SOMETHING.
 9              **THE DEFENDANT:**  CAN I SAY SOMETHING?
10              **MS. KIM:**  AS LONG AS -- AS LONG AS IT DOESN'T GO INTO
11    ANY FACT OF THE CASE, ESPECIALLY WHAT IS CHARGED HERE.
12              **THE DEFENDANT:**  NOTHING ABOUT THE CASE.  IT'S JUST I
13    JUST WANTED TO SAY, WHEN I WAS RELEASED I DID ASK MY PAROLE
14    OFFICER FOR HELP ME, AND SHE TOLD ME SHE WAS GOING TO HELP, AND
15    AT THE TIME I DIDN'T HAVE NOTHING ELSE TO DO BUT SIT, SIT AND
16    TRY TO GET HELP, BUT MY -- THE SIX MONTHS LEFT ON MY SENTENCE,
17    WHEN I WAS COMING HOME FROM STATE PRISON, SHE TOLD ME SHE WAS
18    GOING TO HAVE EVERYTHING SET UP FOR ME.  SO WHEN I CAME HOME,
19    OBVIOUSLY, NOTHING WAS SET UP FOR ME.
20              SO NOW WHAT I HAVE TO TURN TO?  I DON'T HAVE NOWHERE
21    TO GO.  I DON'T HAVE NO JOB.  I DON'T HAVE ANY THERAPY.  I
22    DON'T HAVE NOTHING.
23              SO AT THE END OF THE DAY, I DID DO WHAT I DID, AND I
24    DID GET INTO TROUBLE -- I'M TAKING FULL RESPONSIBILITY -- BUT
25    THE HELP WASN'T THERE FOR ME, THE HELP WASN'T THERE FOR ME AT
```

```
 1   ALL.  I'M NOT BLAMING NOBODY FOR WHATEVER HAPPENED I'M JUST
 2   SAYING THAT MY PAROLE OFFICER TOLD ME THAT THESE THINGS WAS
 3   GOING TO BE THERE FOR WHEN I GOT RELEASED, AND THAT'S WHAT I
 4   WAS -- THAT'S WHAT I WAS HOPING FOR.  WHEN I GOT OUT, NOTHING
 5   WAS THERE; OH, I'M ABOUT TO SIGN YOU UP FOR THIS, I'M ABOUT TO
 6   SIGN YOU UP FOR THAT.
 7           SO THAT'S ALL I GOT TO SAY.
 8           **THE COURT:**  OKAY.  AND I AM VERY SORRY FOR THAT.
 9           WHAT I CAN TELL YOU IS THIS, AND MAYBE THIS WILL TURN
10   OUT BEING A GOOD THING THAT YOU ACTUALLY GOT FEDERAL CHARGES
11   BECAUSE YOU WILL GET SERVICES.  WE HAVE AN OUTSTANDING
12   PROBATION OFFICE, AS WE DO PRETRIAL, AND WE ALSO HAVE PROGRAMS,
13   LIKE REENTRY YOU MAY BE PERFECTLY PLACED FOR TO GIVE YOU THAT
14   STRUCTURE, THAT SUPPORT, THE HOUSING, THE TREATMENT AND ALL
15   THAT.
16           I CAN'T SPEAK TO WHAT HAPPENED WITH YOUR STATE, BUT
17   WE DO HAVE THAT THERE, AND YOU ABSOLUTELY NEED IT.  I DON'T
18   DISPUTE AT ALL YOU ARE -- YOU KNOW -- YOU ARE WHO YOU ARE AND
19   YOU HAD A TREMENDOUS LOSS IN OCTOBER.  I UNDERSTAND ALL THAT.
20           BUT THE FACT REMAINS THAT ON THAT DAY YOU HAD A
21   LOADED WEAPON ON YOU AND YOU RAN, AND THAT WAS JUST TWO MONTHS
22   AFTER YOU GOT OUT, AND YOU KNEW THAT YOU COULDN'T, THAT YOU
23   COULDN'T.
24           SO -- BUT I APPRECIATE THAT, AND I'M HOPEFUL THAT YOU
25   CAN GET THOSE SERVICES AND THAT THIS TIME IT WILL TURN OUT
```

```
 1  DIFFERENTLY.  BUT I'M NOT PREPARED TO RECONSIDER MY DECISION
 2  TODAY.
 3           ALL RIGHT.  THANK YOU VERY MUCH, AND THANK YOU TO
 4  MR. COLLINS' FAMILY, AND TO THE PROGRAM, WHICH I'M EXCITED
 5  ABOUT THAT, PRETRIAL HAS IDENTIFIED A NEW PROGRAM AND HAS SOME
 6  CLIENTS THERE.  I JUST THINK, GIVEN THESE CIRCUMSTANCES,
 7  MR. COLLINS IS NOT APPROPRIATE AT THIS TIME.  THANK YOU.
 8           (PROCEEDINGS ADJOURNED AT 12:35 P.M.)
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**CERTIFICATE OF TRANSCRIBER**

I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT, TO THE BEST OF MY ABILITY, OF THE ABOVE PAGES OF THE OFFICIAL ELECTRONIC SOUND RECORDING PROVIDED TO ME BY THE U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, OF THE PROCEEDINGS TAKEN ON THE DATE AND TIME PREVIOUSLY STATED IN THE ABOVE MATTER.

I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR, RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN WHICH THIS HEARING WAS TAKEN; AND, FURTHER, THAT I AM NOT FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE ACTION.

*/s/ jmcolumbini*

JOAN MARIE COLUMBINI

JANUARY 24, 2022