SCOTT A. SUGARMAN (No. 68277)
SUGARMAN & CANNON
737 Tehama Street, No. 3
San Francisco, CA. 94103
Telephone: (415) 362-6252
Facsimile: (415) 362-6431
email: scott@sugarmanandcannon.com

Attorneys for Defendant
    ALBERT COLLINS

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO VENUE

| | |
|---|---|
| UNITED STATES OF AMERICA,    ) | No. CR 21 CR 0463 VC |
| )  | |
| Plaintiff,    ) | **ALBERT COLLINS'** |
| )  | **SENTENCING MEMORANDUM** |
| v.    ) | |
| )  | |
| ALBERT COLLINS,    ) | DATE: November 14, 2022 |
| )  | TIME: 1:00 p.m. |
| Defendant.    ) | |

Common charges may arise from uncommon circumstances.

Dr. Gregory's report on Albert Collins, letters from individuals who know him and the exhibits to this Memorandum tell, in many ways, a horrifying background: by the time Mr. Collins was a young teenager, he had already been diagnosed ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." Indeed, that conclusion seems an understatement – what other child was in the room while their mother stabbed another person to death, covering the child in blood, and then a few years later was called to see his father's bullet-ridden body lying dead in his neighborhood during, of all times, the Christmas/New Year's holidays.  His father had been shot down in a drive-by shooting as he walked Mr. Collins' sister to the candy store.

1

Albert Collins did not merely have to confront obstacles in his young life, but mountains of pain, fear, depression and stress. He did not have parents to raise him – indeed, his mother aggravated his struggles well beyond killing her boyfriend in his presence, as documented below. He was not provided the necessary guidance and counseling to help this child understand and address the traumas of his young life. He did not fare well, was not treated well in the community and in turn did not act lawfully in the community, particularly in San Francisco.

No one was ever charged with the murder of Mr. Collins' father. He believed the men who murdered his father were gang members who lived in the same poor, disadvantaged community in which he frequently lived or otherwise often spent time. He feared the same gang members would come for him. He carried a gun to stay alive.

The charge here arose from unremarkable circumstances. San Francisco Police Officers sought to detain Mr. Collins to search him, aware he was on probation supervision from a prior conviction. After officers turned on their emergency lights signaling Mr. Collins to pull his car to the side of the road, he did so. However, he then jumped out of the car and ran through a housing project – followed by the two officers. He was soon captured. Later, officers found a handgun in the bottom of his pant leg.

The officers arrested him, and he was charged in San Francisco Superior Court with being a felon in possession of that gun. The United States Attorney's Office very soon took over the prosecution. He has been in custody for more than one year. Mr. Collins admitted the sole charge in this case.

The central question at this time is what sentence this Court thinks is warranted.

/   /   /

**ALBERT COLLINS' BACKGROUND**

Counsel has attached to this Memorandum a lengthy psychological assessment of Mr. Collins prepared by Dr. Amanda Gregory.  Exhibit A.  Her report summarizes the contents of her lengthy interviews with Mr. Collins, as well as numerous documents, prior psychological assessments, prior academic assessments and other records regarding Mr. Collins.  She also administered a considerable number of tests to evaluate him.

Albert Collins' mother, Precious Davis, was only 14 years old when she gave birth to Albert.  Ms. Davis used illegal drugs and alcohol while he was developing in her womb.  In Dr. Gregory's opinion, his mother's ingestion of drugs during her pregnancy very likely adversely affected his development [page 26 of 29].  PSR para 48.

Mr. Collins' parents were together only when he was very little, after which he lived with his father for several years in San Francisco.  However, though his mother was a regular drug user [crack cocaine was her drug of choice] and had no stable home or income, she decided to snatch Albert from his father's home and raise him while she lived on the streets.  She took him from his father's San Francisco home and kept him in Oakland.  Ms. Davis cut off Mr. Collins from seeing or communicating with his father, so that he had no contact with him.  PSR para 50.

Albert Colins was forced to "live" with her for nearly five years, during which time she regularly neglected him emotionally, physically and psychologically.  She would abandon him to abandoned houses for hours at a time, or longer, while she went to look for, or use, illegal drugs with her "boyfriends."  He was frequently moved from place to place, sometimes staying in public shelters.  His mother frequently beat him, using a belt, extension cord or coat hanger.  He witnessed domestic violence between his mother and her boyfriends. He sometimes had no food to eat, and commonly no safe place to sleep or live.  PSR para 49.

Worse yet, his mother attacked two boyfriends with a knife in little Albert's presence. On the first occasion, the boyfriend survived her attack. However, Ms. Davis murdered the second boyfriend with 10-year-old Albert watching the fight and his death, leaving him literally covered in blood. Ms. Davis then tried to persuade her son to tell the police a fabricated story regarding the man's death – she wanted little Albert to lie to the police. He apparently told the truth. The Alameda County District Attorney charged Ms. Davis with murder. She pled guilty to voluntary manslaughter and was sentenced to prison. Exhibit B; PSR para 50.

Mr. Collins felt he did not have a mother, and he was largely correct. Ms. Davis had her own demons and spent precious little time raising Albert. A year ago, shortly before Mr. Collins was arrested in this case, she died of a fentanyl overdose.

After Ms. Davis was arrested and charged with murder, Mr. Collins moved to San Francisco to live with his father, Albert Collins Sr., where he finally believed he had a bit of stability and felt somewhat protected, as all children should feel. Sadly, a disappearing illusion – when Albert was just 12 years old, his father was shot dead in the street in a drive-by shooting whose intended target was another person. Mr. Collins died protecting Albert's young sister, Mariah Collins, from the gunfire. Albert came to the scene to see his father dead on the sidewalk. Mr. Collins Sr. had been walking to a candy store to buy some treats for his children.[1] Exhibit C; PSR para 53.

Dr. Gregory[2] reported that an earlier psychological report noted ▆▆▆▆▆ ▆▆▆▆▆ That is hardly surprising – he suffered more trauma than a human being can tolerate.

---

[1] Sadly, this was not the only death Mr. Collins witnessed. As he reported to Dr. Gregory, he estimated that he saw "over 20 people" shot, some died [page 7 of 29].
[2] As noted on pages 1 and 2 of her report, Dr. Gregory reviewed a wide range of documents related to Mr. Collins, many going back 10 to 15 years, and spent nine hours interviewing and testing him.

ALBERT COLLINS' SENTENCING MEMORANDUM - REDACTED

4

Mr. Collins was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ when he was just 12 years old. It is not surprising that he became angry and defiant after his father's murder -- understandably angry that no one was prosecuted for his father's murder -- while at the same time withdrawing and being more distrustful of others, even those who wished to help him. Afterall, he knew that love and support can be snatched away in a second; trust and openness are not a shield against a well-placed bullet.

Mr. Collins has lived a life in the streets since then.[3] He has witnessed numerous friends shot and killed. He must have internalized the belief that his life was likely to be very short and end violently, as it had for his mother and father. He found street drugs, though mostly marijuana, helped him to cope with his stress and anxiety. With his mother in prison for killing her boyfriend and his father dead, he came to live with a grandmother for a short time – until she untimely died of a heart attack. He was alone and desperate for human contact, and so he found a community in the Sunnydale section of San Francisco with wild young men, but young men who would cover his back. And he felt vulnerable indeed.

While the facts of Mr. Collins' life document a young life of trauma and pain, Dr. Gregory administered one test to help measure the depth of his trauma, the Adverse Childhood Experiences Questionnaire [page 22 of 29]. Dr. Gregory explained that Albert Collins ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ To place Mr. Collins' condition in perspective, Dr. Gregory advised "the more ACEs a person has, the greater the risk of chronic disease, mental illness, violence and being the victim of violence." She further reported that with an ACE score of 6 or higher are at risk "of their lifespan being shorted by 20 years." ▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[3] "After the loss of both parents and the death of his grandmother, he lacked a stable home environment and moved round to different family members, juvenile hall, and several group homes" [page 27 of 29].

Dr. Gregory also sought to measure how strong Mr. Collins was suffering PTSD, a condition diagnosed when he was a young teenager after his father's murder. Sadly, her testing ████████████████████████████████████████████████████████████████████████████████

It appears from early in his life he was diagnosed as suffering significant intellectual handicaps, whether from his mother's use of drugs while she was pregnant or otherwise. Early on, he was diagnosed with learning disabilities, but it does not appear much was done to assist him. Dr. Gregory noted that testing done when Mr. Collins was 15 years old showed that he had very low-test scores in almost every area. It was sad and telling that ████████████████ ████████████████████████████████████████████████████████████████████████████████

████ Dr. Gregory's report provides that testing in high school showed ███████████ ██████" as well as emotional and behavioral struggles that significantly limited his learning [page 18 of 29].

Dr. Gregory uncovered another area of disability. Dr. Gregory tested Albert Collins for his executive functioning [page 21 of 29]. Executive functioning measures one's abilities to complete goal-oriented behavior. ████████████████████████████████████████ ████████████████████████ That means he has great difficulty doing the tasks most of us can do with ease or some effort. He needs more guidance and support than most, while he has gotten less guidance and support over his lifetime.

It is noteworthy as this Court considers the appropriate sentence how often Mr. Collins told Dr. Gregory he accepted responsibility for making so many errors. Counsel did not have the

6

ALBERT COLLINS' SENTENCING MEMORANDUM - REDACTED

impression that his acceptance of responsibility was the lament of someone facing sentencing, but that he found it helpful talking to a psychologist who was trying to understand him, and he wanted to give her a fair sense of who he was.  He admitted he had hung out with the wrong crowd, was badly influenced by illegal drugs, was too quick to anger, had wasted some of the few chances to step a bit away from his street life [like the coach who wanted to help him get to college on a football scholarship].  Significantly, he told Dr. Gregory that he wants a different and better life for himself – that was a recurrent theme in Dr. Gregory's report.  He understands that he needs and wants both counseling and medication to help him address his psychiatric struggles.[4]  As Dr. Gregory observed, Mr. Collins "certainly does not minimize his problems" [page 28 of 29].

He also understands that he has been using illegal drugs and marijuana to help him deal with considerable psychological strain and distress.  He wants more intensive substance abuse counseling, another sign he is at an inflection point in his life to move away from his destructive conduct in the street.  While he is well-liked, as evidenced by the letters attached to his Memorandum [Exhibit D], and has some success writing and performing music, Dr. Gregory opined based on her testing and interviews that "his self-esteem appears quite fragile" [page 24 of 29].  That traumas he has experienced since he was a child have left him feeling inadequate, not appreciated and not competent as a person – he will need supportive guidance and direction.

---

[4] E.g., "he was reporting substantial interest in making changes in his life and he appears motivated to engage in treatment" [page 24 of 29]; "when asked how he plans to stay out of trouble, Mr. Collins said he would engage in treatment and stop hanging around people with whom he engages in behavior that can result in his arrest" [page 25 of 29]; "he said he is open to any support and programs that will l help him move in a positive direction in life" [page 26 of 29].

7

ALBERT COLLINS' SENTENCING MEMORANDUM - REDACTED

Dr. Gregory's report confirms that Mr. Collins has long be diagnosed ▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ a diagnosis confirmed repeatedly while he was in California state prison from 2019 to 2021. It was telling that he was prescribed and ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ while in prison – a setting not known to treat mental health struggles for inmates – and took those medications for most of his time in prison. He was also engaged in counseling for much of that period. However, when he was released in September 2021 – two months prior to his arrest in this case – neither CDCR nor his San Francisco probation officer arranged for Mr. Collins to have either psychiatric medication or to engage in serious psychiatric counselling. He was more or less just cut loose from the two supports that he had, counseling and medication.[5]

---

[5] Mr. Collins has been confined in the Santa Rita Jail since his arrest in November 2021. It appears Jail staff were aware CDCR was providing counseling and psychiatric medications to Mr. Collins. Yet, to counsel's knowledge, Santa Rita only began to provide medication this spring after counsel complained that Santa Rita jail staff was not providing him any mental health care.

The Alameda County Sheriff has long defended litigation claiming inadequate mental health care for its inmates. In April 2021, the Justice Department concluded that "Santa Rita Jail fails to provide constitutionally adequate mental health care to prisoners with serious mental health needs, including those at risk of suicide."
https://www.pleasantonweekly.com/news/2022/03/27/county-sued-over-another-suicide-at-santa-rita-jail#:~:text=In%20April%202021%2C%20the%20Justice,in%20the%20treatment%20of%20detainees.

> Serious safety violations, inadequate medical services and poor sanitation are among a host of critical issues plaguing Santa Rita Jail, Alameda County's notorious lockup.
> That's according to a civil grand jury investigation of the long-troubled Dublin-based jail, the county's main adult detention facility. The report, released Tuesday, details a litany of major problems at the jail that have resulted in unsafe conditions for its detainees and staff, and spurred a "multiple-year pattern of lawsuits concerning conditions."
> "The concerns identified in this report represent material health, safety, and financial risks and as such warrant urgent attention," the 35-page report states.

https://www.kqed.org/news/11918230/grand-jury-major-health-and-safety-violations-at-santa-rita-jail-require-urgent-attention.

ALBERT COLLINS' SENTENCING MEMORANDUM - REDACTED

Psychologists have come to understand that when individuals suffer significant trauma when young – such as domestic violence or abuse – they are at higher risk of suffering mental illness etc. [page 22 of 29]. Individuals with a score of 6 or higher are at risk of a substantially shortened life. ████████████████████████████████████████████████████████████████████████████████████. Mr. Collins informed Dr. Gregory that he struggles with flashbacks, upsetting memories etc. He is a man in need of considerable therapy and support.

## CONCLUSION

Albert Collins Jr. is a troubled young man, abused inside and out.

Counsel for the parties and the PSR agreed that the sentencing range under the Sentencing Guidelines is 21 to 27 months, given Mr. Collins criminal history. The PSR recommends a sentence of 15 months in prison. Mr. Collins asks this Court not to sentence him to any more custodial confinement than recommended in the PSR and to consider a sentence of credit for time served.

He has already served more than one year in actual custody, since his arrest on November 2, 2021.[6] If this Court imposes the 15-month sentence recommended in the PSR, with the good time credits to which he is entitled under 18 U.S.C. § 3624, if BOP follows its common practice, BOP could release him to a halfway house or home arrest immediately and would have to release from custody completely in a few weeks.

---

[6] Police officers arrested Mr. Collins for possession of the gun charged in this case. However, he was first charged in San Francisco Superior Court, but the District Attorney dismissed the charges when he was charged in this Court. Because he was in custody on the charge of felon in possession of a gun since November 2, 2021, counsel asks this Court to grant him presentence credit from that date.

Counsel contends there is serious doubt more time in prison will help him or the community.  He seems ready to change but needs considerable support.  He is willing to take prescribed medication and to participate in both drug and mental health counseling.  Mr. Collins understands that "hanging out" with his acquaintances in San Francisco's Sunnydale neighborhood is unhealthy for him – he will agree to a condition of release to stay out of San Francisco, other than with permission of his probation officer.

Counsel asks this Court to direct Probation to establish immediately 1) access to psychiatric medication 2) mental health counseling and 3) drug abuse counseling.

Tasha Barnes, his stepmother [his deceased father's common-law wife and mother of his stepsister] has told counsel and the author of the PSR that he can live with her.  PSR para 61.  She lives in San Pablo in the East Bay, out of harms' way in San Francisco.   He is willing to abide by a Court condition that he stay out of the City and County of San Francisco except when granted permission by his Probation Officer or to appear in this Court.

If this Court concludes that residence is not appropriate, counsel asks that Mr. Colins be released to a halfway house in the East Bay pending further investigation of where he may live.

DATE: November 7, 2022              Respectfully submitted,

_____/s/_____
Scott A. Sugarman
Attorney for Albert Collins Jr.