Pages **1 - 15**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince G. Chhabria, Judge

| | |
|---|---|
| UNITED STATES OF AMERICA,    )<br>                              )<br>          Plaintiff,         )<br>                              )<br>  VS.                         )<br>                              )<br>ALBERT BURNELL COLLINS,       )<br>                              )<br>          Defendant.          )<br>_____) | **NO.  3:21-CR-00463-VC-1** |

San Francisco, California
Wednesday, September 4, 2024

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:
        ISMAIL J. RAMSEY
        United States Attorney
        450 Golden Gate Avenue
        San Francisco, California  94102
  **BY:  CHRISTINE CHEN**
        **ASSISTANT UNITED STATES ATTORNEY**

For Defendant:
        KEKER, VAN NEST AND PETERS
        633 Battery Street
        San Francisco, CA 94111
  **BY:  CODY J.K. GRAY**
        **ATTORNEY AT LAW**

Reported Remotely By:    Stephen W. Franklin, RMR, CRR, CPE
                      Official United States Reporter

|    |                                                                                    |
|----|------------------------------------------------------------------------------------|
| 1  | **Wednesday - September 4, 2024**                                      **1:05 p.m.** |
| 2  | <u>**P R O C E E D I N G S**</u>                                                    |
| 3  | ---o0o---                                                                           |
| 4  | **THE COURTROOM DEPUTY:** Now calling criminal case                                 |
| 5  | 21-463, USA versus Albert Collins.  Will counsel please come                        |
| 6  | forward and state your appearances for the record starting with                     |
| 7  | the government.                                                                     |
| 8  | **MS. CHEN:**  Good afternoon, Your Honor.  Christine                               |
| 9  | Chen for the United States.                                                         |
| 10 | **THE COURT:**  Good afternoon.                                                     |
| 11 | **MR. GRAY:**  Good afternoon, Your Honor.  Cody Gray                               |
| 12 | from Keker Van Nest and Peters for the defendant, Mr. Collins,                      |
| 13 | who is not present and is out of custody.                                           |
| 14 | **THE COURT:**  Okay.  We'll talk about the not present                             |
| 15 | part in just a second.                                                              |
| 16 | **PROBATION OFFICER:**  Good afternoon, Your Honor.                                 |
| 17 | Kevin Maynard, U.S. Probation.                                                      |
| 18 | **THE COURT:**  Good afternoon.                                                     |
| 19 | Okay.  So this is an initial appearance on a supervised                             |
| 20 | release violation; is that right?                                                   |
| 21 | **MR. GRAY:**  That's correct, Your Honor.                                          |
| 22 | **THE COURT:**  Okay.  And Mr. Collins is not here why?                             |
| 23 | **MR. GRAY:**  He was arranging for travel.  It fell                                |
| 24 | through at the last moment.  He's available telephonically.  I                      |
| 25 | just spoke with him.  He's willing to call in or have us call                       |

1  him if he needs to be here.
2  **THE COURT:** Well, you know, I assume that nothing of
3  consequence is going to get done today.  It's just sort of a
4  status conference.
5  **MS. CHEN:** I will review for the Court that I intend
6  to dismiss the Form 12 charge, and I can go into reasons why,
7  but I don't know if we want to wait for Mr. Collins to be here
8  and do that.
9  **THE COURT:** Yeah, why don't you get him on the phone.
10  **MR. GRAY:** Okay.  I don't know, is there a way to
11  call through, like, the court system, or should I just call
12  them on my cellphone?
13  **THE COURT:** Yeah, Bhavna can get him on the phone.
14  **THE COURTROOM DEPUTY:** If you can direct him to join
15  the Zoom call -- it's the nonpublic link on Judge Chhabria's
16  website -- and I'll admit him.  Just make sure his name is his
17  first and last name so I can bring him in.
18  **THE COURT:** Maybe we should just call the next case,
19  and you can coordinate with him and get him on the Zoom, and
20  then we'll go from there.
21  **MR. GRAY:** Great.  Thank you, Your Honor.
22  **THE COURT:** Okay.  Thank you.
23      (A recess was taken from 1:07 p.m. to 1:32 p.m.)
24  **THE COURT:** Okay.  Hi, Mr. Collins.  I can see and
25  hear you now.  I will allow the courtroom deputy to call the

1  case once again.
2          **THE DEFENDANT:** All right. How you doing, Judge
3  Chhabria?
4          **THE COURT:** Good, thank you.
5          **THE COURTROOM DEPUTY:** Now calling criminal case
6  21-463, USA versus Albert Collins. Will counsel please state
7  your appearances for the record starting with the government.
8          **MS. CHEN:** Good afternoon again, Your Honor.
9  Christine Chen for the United States.
10         **THE COURT:** Good afternoon.
11         **MR. GRAY:** Good afternoon again, Your Honor. Cody
12 Gray for the defendant, Mr. Collins, who is out of custody and
13 appearing by Zoom.
14         **THE COURT:** Okay.
15         **PROBATION OFFICER:** Good afternoon, Your Honor.
16 Kevin Maynard, U.S. Probation.
17         **THE COURT:** All right. And Mr. Collins, I understand
18 you had a transportation problem today. Are you --
19         **THE DEFENDANT:** Yes.
20         **THE COURT:** Do you consent to appearing at this
21 hearing by Zoom, as opposed to in person?
22         **THE DEFENDANT:** Yes, sir.
23         **THE COURT:** Okay. And you've discussed that with
24 your lawyer?
25         **THE DEFENDANT:** Yes.

1           **THE COURT:** Okay. And Mr. Gray, you've advised your
2    client of the right to be here in person if he wishes?
3           **MR. GRAY:** Absolutely.
4           **THE COURT:** Okay. All right. Then we can proceed.
5    Now, I understand that you wish to dismiss the Form 12?
6           **MS. CHEN:** Yes, Your Honor.
7           **THE COURT:** Tell me what's going on.
8           **MS. CHEN:** So the Form 12 is very serious. It
9    concerned domestic violence allegations, and the alleged victim
10   suffered serious injuries. But I've spoken with the victim
11   myself, and the victim showed up in support of the defendant at
12   his detention hearing, and I understand from probation that
13   it's also her wishes to -- that the defendant was not actually
14   the one who inflicted those injuries. I confirmed that myself
15   with the victim. She actually also mentioned that if he wasn't
16   there, things would have been worse.
17       So given the victim's wishes here, I think the appropriate
18   and just action to take here is dismissal of the Form 12
19   charge.
20          **THE COURT:** I mean, based on what you've just
21   described, it's not clear to me why the just action is to
22   dismiss the Form 12 charge based solely on what you just said.
23   What you just said is that the defendant was arrested on a
24   domestic violence incident and the victim recanted, and
25   therefore we should dismiss the charge. That's -- in a

1  domestic violence situation that's not an adequate explanation
2  for dismissing the charge.  Especially, I might add, in a
3  situation where the burden of proof is not beyond a reasonable
4  doubt.
5          **MS. CHEN:**  Yes, Your Honor.  Yes, it's a lower burden
6  here.  I understand that.
7          **THE COURT:**  So if you had said something along the
8  lines of, we conducted our own independent investigation and we
9  concluded that Mr. Collins actually did not commit the offense
10 that he was arrested for, that would be different.  But to
11 simply say that the victim is recanting is a little -- it's a
12 little unsettling to hear the government say that.
13         **MS. CHEN:**  Apologies, Your Honor.  You're absolutely
14 right that I framed this incorrectly.  I investigated to see
15 whether the allegations were true or not, and I don't --
16         **THE COURT:**  And what do you base your conclusion on
17 other than the victim's recantation?
18         **MS. CHEN:**  I've also spoken with the Alameda DA's
19 office, as they were the ones who initially brought this case,
20 and they informed me that they dropped the -- that they are not
21 prosecuting, not pressing charges, in part because the victim
22 recanted, but also because there's no corroborating medical
23 records.  So, for example, they asked her for -- she sought
24 medical care for her injuries, but it was dated to prior to
25 when she alleges the incident happened.  So I don't believe the

1  government would be able to prove by a preponderance of the
2  evidence that Mr. Collins was the one who inflicted those
3  injuries.
4         **THE COURT:** Can you explain that last part to me
5  again about the seeking treatment for the injuries at some time
6  before she reported the incident? I didn't follow that.
7         **MS. CHEN:** Yes, Your Honor.
8     So she reported that on or about June 27th Mr. Collins had
9  assaulted her, and she sought medical care for those injuries,
10 and the investigating officers had asked for that report. But
11 when they received the report, it was dated --
12        **THE COURT:** What report?
13        **MS. CHEN:** The medical report just documenting that
14 she had received medical care. That was dated before
15 June 27th.
16        **THE COURT:** What date?
17        **MS. CHEN:** I believe it was June 14th. One moment.
18 Yes, June 14th. So about two weeks before the alleged
19 incident.
20        **THE COURT:** Okay. So obviously, Mr. Gray, I haven't
21 heard from you yet. I'm happy to hear from you, but I want to
22 let you know what my tentative inclination is for how we should
23 proceed here.
24    Okay. So this is a defendant who is convicted of being a
25 felon in possession with a firearm. Right? And, you know, in

1  the incident for which he was convicted, for which he was
2  sentenced in this case, he fled from officers and he fought
3  with officers, and they found a semiautomatic pistol on him
4  after they subdued him.  So that was the crime.  Right?
5      Then I'm going to go to the criminal history in the
6  presence report.  Okay.  So criminal history, there have
7  been a number of convictions.  There's a juvenile conviction
8  for assault with a deadly weapon, not a firearm.  There was --
9  as an adult, there was possession of a firearm, it looks like.
10 Then there was also second degree robbery, and there was
11 another of -- and then later on, there was another firearm
12 conviction along with a grand theft conviction.  There were
13 also a number of arrests, most of which appeared to be in San
14 Francisco.  There was receiving stolen property and robbery;
15 that was as a juvenile.  There were a number of arrests as a
16 juvenile.  Most of them look like arrests for violent crimes
17 for fighting.
18     And then let's see, I'll just go to the adult arrests.
19 Taking a vehicle without consent, evading a police officer,
20 child cruelty, hit and run.  These are arrests, of course.
21 That was in 2015.  2017 evading/obstructing a peace officer,
22 drive while license suspended.  2018, battery.  In 2018,
23 battery with serious bodily injury.  Those were apparently two
24 weeks apart, those arrests.  Then there was assault by a
25 prisoner.

1  So, you know, I guess what I'm saying is, you know, this
2  is somebody who committed a serious crime, was convicted of
3  committing a serious crime, while on supervised release was
4  arrested for a serious crime.  It's a crime where the victim
5  often recants and the district attorney often drops charges
6  because the victim recants, because that precludes them from
7  proving their case beyond a reasonable doubt.  This is a
8  defendant with a number of convictions for violent crimes and a
9  number of arrests for violent crimes, including many in San
10 Francisco, where the charges tend to get dropped even when
11 perhaps they shouldn't.  And, you know, I'm just not
12 comfortable on this record dismissing the Form 12.
13     So what I would be inclined to do -- and again, I'm happy
14 to hear from Mr. Gray -- but what I would be inclined to do --
15 you know, and by the way, the defendant's not even here.
16 Right?  So, you know, what I would be inclined to do is ask the
17 U.S. Attorney's Office to submit a request in writing
18 explaining why dismissal of the Form 12 is appropriate
19 notwithstanding everything I just said on the record.  And so
20 I'll ask you to order a transcript of this and have that at
21 your disposal when you write something, and you can submit a
22 written request for a dismissal and maybe run it up the
23 flagpole.
24     Because it's not clear to me.  You know, I don't know how
25 much consideration this has been given, or, you know, it's not

1  obvious to me at this moment that it would be appropriate to
2  dismiss the Form 12.  So at a minimum I want the U.S.
3  Attorney's Office to give it some careful -- give it a second
4  look and file something in writing justifying it.
5           **MS. CHEN:**  I can do that, Your Honor.  Is there a
6  particular date you'd want that filed?
7           **THE COURT:**  Well, we can discuss that.
8       But Mr. Gray, do you have anything that you want to offer?
9           **MR. GRAY:**  Yes, yes, Your Honor.  Thank you.
10      So, you know, we obviously support the government's motion
11 today.  I would disagree with the Court's statement just now
12 that the defendant's not here.  He is here appearing by Zoom
13 with the permission and consent of the Court.
14      As you noted, the victim -- he was arrested on a domestic
15 violence charge.  He was never actually charged for that; the
16 victim recanted.  We're still investigating, but it's giving a
17 very plausible interpretation that leads me to believe that he
18 was not actually the person involved in this domestic violence
19 incident.  But understood that the Court has reasons to, you
20 know, want to hear more about that.
21      The DA's not prosecuting.  They found that there weren't
22 corroborating medical records.  The victim said that she was
23 assaulted on a particular date.  The medical records were from
24 weeks before that.  There are credibility issues as to that
25 person.

1    I think Ms. Chen did a good job explaining sort of the
2  bigger-picture issues related to why dismissal is appropriate.
3  There's one that I think I want to add to that which Your Honor
4  may not be aware of that I think favors dismissal in the
5  interests of justice, which is that Mr. Collins was actually in
6  custody for 31 days already on this arrest for something that
7  he was not charged for and that he contends he did not do and
8  that the victim contends he did not do.  This came out at his
9  detention hearing.  But he waited 29 days to get an initial
10 appearance, obviously in violation of the Bail Reform Act, but
11 29 days to get an initial appearance here in this court after
12 his arrest.
13      **THE COURT:**  How did that happen?
14      **MR. GRAY:**  So this was the subject of our last
15 detention hearing.  Magistrate Judge Cisneros, to her very
16 great credit, spent a lot of time looking into how that
17 happened.  We can order the transcript for that hearing.  My
18 recollection of it is that she said that when he was arrested
19 in the state by the DA and affiliated entities, he was supposed
20 to at some point be transferred to like federal custody, and
21 there was a new employee at Santa Rita who didn't really know
22 what they were doing, and it wasn't done correctly.  And then
23 folks were on vacation, and his prior CJA lawyer had retired.
24 And this all happened in August, and you know, one thing led to
25 another.  He ends up spending 29 days in custody on this

1   without even getting before a judge.
2       And then, you know, I get appointed the next day.  We go
3   immediately back in.  The victim comes to court, says that he
4   didn't actually do this, and states in my presence that she
5   submitted a false police report, you know, because he -- there
6   are reasons we can get into why I believe that's true, but
7   that's what she says in our presence, I believe all of our
8   presence at the last detention hearing before Judge Cisneros.
9   Judge Cisneros orders him released from custody.  He's already
10  served 31 days in prison for this.
11      And so I want to make sure the Court is aware of all of
12  that as it considers what's in the interests of justice here.
13          **THE COURT:**  Okay.  And by the way, if you wish to --
14  it's not required, and you've just articulated these points
15  very well, but if you wish to submit something in writing at
16  the same time as the government, you're totally welcome to do
17  so.
18          **MR. GRAY:**  Thank you, Your Honor.
19          **THE COURT:**  Or in response to the government or
20  whatever.
21      So is two weeks a reasonable amount of time?
22          **MS. CHEN:**  I will be out in two weeks, so if we could
23  do -- no, I'll be here.  September 18th works.
24          **THE COURT:**  Okay.  But I'm asking for your written
25  submission.  So I was going to ask you, the U.S. Attorney's

1  Office, to submit something in writing by two weeks from today
2  justifying the request for dismissal.
3          **MS. CHEN:**  Yes, Your Honor.  I was just concerned
4  that I'd be out of the country and be unable to access PACER,
5  but I will be here and able to submit something in writing by
6  the 18th.
7          **THE COURT:**  Okay.  And then maybe seven days after
8  that.  You know, obviously if they change their mind, you're
9  probably going to want to write something about that.  And if
10 they don't, you may want to write something in support of it.
11 So you want to say seven days after that?
12         **MR. GRAY:**  For a response from the defense?
13         **THE COURT:**  Yeah.
14         **MR. GRAY:**  That works, Your Honor.
15         **THE COURT:**  Is that okay?
16         **MR. GRAY:**  That's okay.  I have a trial starting the
17 next -- you know, September 30th, but -- it will be pretty
18 busy, but I can make it work.
19         **THE COURT:**  Where is your trial?
20         **MR. GRAY:**  Judge Davila down in San Jose.
21         **THE COURT:**  A CJA case?
22         **MR. GRAY:**  A civil case, Your Honor.
23         **THE COURT:**  Patent case?
24         **MR. GRAY:**  It's got a patent involved.  Breach of
25 contract case.

1           **THE COURT:** Good.  Good luck.
2      Okay.  So then what were the dates, the 18th and the 25th?
3           **MS. CHEN:** That's right, Your Honor.
4           **THE COURT:** Okay.  And if you need to request an
5  extension, you can.  I mean, you know, Mr. Collins is out of
6  custody.
7           **MR. GRAY:** Correct.
8           **THE COURT:** So ...
9           **MR. GRAY:** Thank you, Your Honor.
10          **THE COURT:** Okay.  All right.  And then we'll
11 schedule -- why don't we schedule a further status conference
12 for -- when will your trial be over?
13          **MR. GRAY:** I expect it to end around October 25th.
14          **THE COURT:** Okay.  Do you have any dark days?
15          **MR. GRAY:** We are -- yeah, so he's only live three
16 days a week:  Tuesday, Wednesday, Friday.  But I will be in San
17 Jose.
18          **THE COURT:** The whole time?
19          **MR. GRAY:** Pretty much the whole time.
20          **THE COURT:** In a hotel?
21          **MR. GRAY:** Yeah.  I mean, you know, the Fairmont, the
22 usual stuff right across the street.
23          **THE COURT:** Okay.  So do you want to --
24          **MR. GRAY:** I guess my preference would be the
25 following week after that.  So maybe the week of October 28th.

```
1              THE COURT:  Okay.  That's fine.  And then in light of
2    the fact that -- so we'll say October 30th --
3              MR. GRAY:  Okay.
4              THE COURT:  -- for further status conference.
5         And in light of that, if you want more time, if both sides
6    want more time to make their submissions, that's totally fine,
7    too.  Right?
8         So do you want to say that the government's submission is
9    due, and if it's going to be a request to dismiss the Form 12
10   you can just call it that, or you can call it something else if
11   it ends up being something else.  But why don't we say yours is
12   due October 2nd, and that any response from the defense is due
13   October 16th.
14             MS. CHEN:  I appreciate the extra time, Your Honor.
15             THE COURT:  Okay.  All right.  Thank you.
16        (Proceedings concluded at 1:50 p.m.)
```

### CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:  Tuesday, September 10, 2024

_____

Stephen W. Franklin, RMR, CRR, CPE
Official Reporter, U.S. District Court