1              UNITED STATES DISTRICT COURT

2             NORTHERN DISTRICT OF CALIFORNIA

3      Before The Honorable Lisa J. Cisneros, Magistrate Judge

4

5  UNITED STATES OF AMERICA,      )
                                  )
6            Plaintiff,           )
                                  )
7  vs.                           )   No. CR 21-00463-VC
                                  )
8  ALBERT COLLINS,                )
                                  )
9            Defendant.           )
   _____)

10

11                              San Francisco, California
                                Wednesday, August 7, 2024

12

13   TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
              RECORDING 11:31 - 11:43 = 12 MINUTES

14

   APPEARANCES:
15

   For Plaintiff:
16                              United States Attorney's
                                   Office
17                              450 Golden Gate Avenue
                                11th Floor
18                              San Francisco, California
                                   94102
19                         BY:  CHRISTINA CHEN, ESQ.

20 For Defendant:
                                Keker Van Nest & Peters
21                              633 Battery Street
                                San Francisco, California
22                                 94111
                           BY:  CODY GRAY, ESQ.

23

24         (APPEARANCES CONTINUED ON THE NEXT PAGE.)

25

2

1  United States Probation:
                                KEVIN MAYNOR

2

3  Transcribed by:              Echo Reporting, Inc.
                                Contracted Court Reporter/
4                               Transcriber
                                echoreporting@yahoo.com
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1  <u>Wednesday, August 7, 2024</u>                    <u>11:31 a.m.</u>

2                    P-R-O-C-E-E-D-I-N-G-S

3                         --oOo--

4           THE CLERK:  We are now calling criminal matter 21-

5  CR-00463, U.S.A. v. Collins.

6       Counsel, please state your appearance for the record,

7  beginning with the Government.

8           MS. CHEN:  Good morning, your Honor.  Christine

9  Chen for the United States.

10          THE COURT:  Good morning.

11          MR. GRAY:  Good morning, your Honor.  Cody Gray,

12 and I'll be seeking appointment on behalf of Mr. Collins.

13          THE COURT:  Okay.  Good morning.

14          MR. MAYNOR:  Good morning, your Honor.  Kevin

15 Maynor, U.S. Probation.

16          THE COURT:  Okay.  Good morning.

17      So, I have this on for appointment of counsel and also

18 a request by the government to detain Mr. Collins.  So let's

19 -- I -- there's probably an affidavit?

20          MR. GRAY:  Yes.

21          THE COURT:  Okay.

22          MR. GRAY:  Just having Mr. Collins sign it.

23      (Pause.)

24          THE COURT:  Okay.  Mr. Collins, I've got this

25 information that you provided under penalty of perjury.  It

4

1  indicates that you do have employment, but given your

2  monthly pay -- your hourly rate and your monthly expenses,

3  it's clear to me that you can't afford to hire your own

4  attorney, so I'll appoint counsel for you, and Mr. Gray is

5  going to be your attorney going forward.

6          MR. GRAY:  Your Honor, I was instructed that I

7  should ask to be appointed effective as of August 5th, nunc

8  pro tunc.

9          THE COURT:  Okay.  So that's nunc pro tunc?

10          MR. GRAY:  Yes.  Yes.

11          THE COURT:  So I will appoint you, dating back to

12  August 5th, 2024.

13          MR. GRAY:  Thank you very much.

14          THE COURT:  Okay.  Thank you.

15      So, we'll get to two things.  You have detention -- the

16  detention request and also concerns that Mr. Collins raised

17  at his last appearance, that he was detained for several

18  weeks before he was brought before this Court for an initial

19  appearance.

20      So, you know, that's obviously a serious concern.  It

21  would be contrary to the Bail Reform Act to have such a

22  delay, so I did look into it, Mr. Collins, and his

23  provisionally appointed counsel thought that I ought to

24  consider the delay as part of the overall factors in

25  weighing whether or not detention was appropriate or release

5

1 would be more appropriate.

2     So, just to explain what I had learned, is that there

3 was a miscommunication between the jail, Santa Rita, and the

4 Marshal's office, such that there was no request for remand

5 to transfer you from state custody to federal custody.  So

6 because the jail did not request the remand slip from the

7 U.S. Marshal's office, that was never submitted, so you

8 remained in state custody and you had never been transferred

9 to federal custody.  My understanding is there was some new

10 employee at the jail who didn't make the proper

11 communications to the Marshal's office.

12     So that said, I believe that you -- at least you had a

13 family member that was attempting to reach out for help on

14 your behalf.  Did you try to call for help yourself directly

15 from the jail at any point?  I just would want to know --

16          THE DEFENDANT:  No.  I didn't know how.

17          THE COURT:  Okay.  Okay.  So, I'm -- your cousin

18 reached out to probation office and left a message.  Did

19 your cousin call anyone else besides probation office, like

20 your attorney?

21          THE DEFENDANT:  Yeah, uh --

22          THE COURT:  Did you try to call your attorney?

23          THE DEFENDANT:  Yeah, he said he had called

24 Scott--

25          THE COURT:  Do you mind speaking, sir, Mr.

6

1 Collins, into the mic, just so I can hear you clearly?

2          THE DEFENDANT:  He said he had called Scott

3 Sugarman and he hung up the phone and that was it.

4          THE COURT:  Sorry, you called or your cousin

5 called?

6          THE DEFENDANT:  My cousin called Scott Sugarman

7 and he hung up the phone.

8          THE COURT:  Sugarman.  Mr. Sugarman --

9          THE DEFENDANT:  Yeah.

10          THE COURT:  -- hung up the phone?

11          THE DEFENDANT:  Yeah.

12          THE COURT:  Okay.

13          MR. GRAY:  It's my understanding, your Honor, that

14 Mr. Sugarman has retired.

15          THE COURT:  Well there's nothing posted on the

16 docket that reflects that.

17     Okay.  Well, do you know when your cousin called Mr.

18 Sugarman?

19          THE DEFENDANT:  Probably like two weeks ago.

20          THE COURT:  Okay.  Two weeks ago.  Okay.  My

21 understanding is your cousin also put in a call to probation

22 office and left a message.

23          THE DEFENDANT:  Yeah.

24          THE COURT:  The probation officer was out on

25 vacation for at least some of that time, so there was some

7

1  delay on that point too.  So I think there was a couple of

2  gaps where you fell through and so that's my understanding

3  of how -- how this situation came to be.  And it's, you

4  know, troubling to me and it's not consistent with how

5  things should be managed so that you get a timely

6  appearance, which you're entitled to under the Bail Reform

7  Act.

8      So, as far as the request for detention goes, what's

9  the Government's position at this point?  Are there any --

10 there is an allegation that's serious, as far as Mr.

11 Collins' conduct and having beaten a girlfriend.  So I don't

12 know if there's a witness is contacted, either probation

13 office or the government, or appeared in court today?

14        MS. CHEN:  So, my understanding is that probation

15 spoke with the girlfriend and she no longer believes that

16 Mr. Collins is the one responsible for her injuries, so

17 we're no longer seeking detention.

18        THE COURT:  Okay.

19        MS. CHEN:  I have talked with defense counsel and

20 probation, and there's small wrinkle with release.  Mr.

21 Collins and his girlfriend were living together, so we

22 talked about a cooling off period so that they're not living

23 together, given their apparently volatile relationship, but

24 I'll have to ask probation to speak more on that about where

25 he would live.

8

1          THE COURT:  Okay.  I'd appreciate an update from
2 probation.
3          MR. MAYNOR:  Yes, your Honor.  I was able to speak
4 to the alleged victim.  She's actually here today in court.
5          THE COURT:  Okay.
6          MR. MAYNOR:  And she basically explained that the
7 details in the police report aren't actually what happened,
8 that there was a -- other parties that were involved in the
9 incident.
10          THE COURT:  Okay.
11          MR. MAYNOR:  So at this time, we are not seeking
12 detention.  I'm going to work with Mr. Collins in order to
13 establish a release plan for him.
14          THE COURT:  Okay.
15          MR. MAYNOR:  so I'll plan to meet with him
16 tomorrow.  He is -- well, the girlfriend and Mr. Collins are
17 proposing to live together, but their new lease doesn't
18 start until August 30th, so our office may have to pay for a
19 place for Mr. Collins to stay until that date that they're
20 able to move into their apartment.
21          THE COURT:  Okay.
22          MR. GRAY:  And, just -- your Honor, on that point,
23 Mr. Collins is seeking to be released today.  He's perfectly
24 happy and willing to go to a halfway house or any other
25 program that would take them (sic) if there were

9

1 availability.  Short of that, he has a home he could go to

2 with his uncle in Chinatown here in San Francisco.  So he

3 does have a place that he could go to today.

4            THE COURT:  I don't know if a halfway house is

5 available and that's --

6            MR. MAYNOR:  No, there's no halfway house space

7 available right now, but he is -- we will be in agreement

8 for him to go to his uncle's house so that I could meet with

9 him tomorrow --

10            THE COURT:  Okay.

11            MR. MAYNOR:  -- in hopes of establishing a more

12 secure plan.

13            THE COURT:  Okay.  That's good.  And so there's no

14 disagreement between the parties, as far as Mr. Collins

15 being released today, except that proposal.  I think that's

16 appropriate for him to go to his uncle's house and to work

17 out a further plan with the probation office.  So I'll leave

18 that in Mr. Maynor's hands.

19      And who -- who is the alleged victim?

20      (No audible response.)

21            THE COURT:  Okay.  Well, welcome to the court.

22 Thank you for coming to court today.  I guess I will just

23 point out that, you know, to the extent there's, you know,

24 instability in the home, that whatever happened on that

25 particular day, it led to an arrest and for unfortunate

10

1  reasons, it also led for -- to an extended period in which

2  Mr. Collins was detained.  So I'm sure probation office can

3  work out, kind of a plan, as far as stabilizing the

4  relationship and it's just something that I think is

5  important, not just to avoid this type of situation, but to

6  ensure that Mr. Collins is able to fulfill his obligations

7  during his period of supervised release.  And sometimes

8  there's bumps in a relationship, but whatever you all need

9  to do, with support from probation office, to ensure that

10 things calm down, you know, please work proactively with Mr.

11 Maynor on that front, because I think it is sort of a

12 foundational need for people to -- to have kind of a stable

13 life and a healthy situation, and to finish out supervised

14 release and not to have a Form 12, because I do see a lot of

15 Form 12s.  I just want to say, I hope that this doesn't

16 happen again.  Okay?

17      All right.  So, can you submit, Mr. Gray, a release

18 order promptly and --

19           MR. GRAY:  Sure.

20           THE COURT:  -- I think there's been -- at least

21 I've not been clear -- or I thought I was clear about what

22 needs to be in the release order, but to ensure he's

23 released promptly, can you include the words not just

24 "forthwith," but today --

25           MR. GRAY:  Sure.

11

1    THE COURT:  -- today's date.  Just in case the
2  probation office -- or excuse me -- the Marshal's office
3  requests that specificity.
4    MR. GRAY:  Sure.  No problem, your Honor.  Thank
5  you.
6    THE COURT:  Okay.
7    MS. CHEN:  We just need a status date in front of
8  Judge Chhabria.  We were thinking September 4th.
9    THE COURT:  Okay.
10    MR. GRAY:  That works for the defense.
11    THE COURT:  Okay.  See --
12    THE CLERK:  And that is available.
13    THE COURT:  Great.
14    MS. CHEN:  What time would that be?
15    THE CLERK:  One second.  At 1:00.  1:00 p.m.
16    MS. CHEN:  Thank you.
17  (Pause.)
18    THE COURT:  Okay.  All right.  So you have your
19  next date, Mr. Collins, on September 4th at 1:00 p.m. in
20  front of Judge Chhabria.
21  Is there anything further that defense counsel needs?
22    MR. GRAY:  I don't think so, your Honor.
23    THE COURT:  Okay.  Probation?
24    MR. MAYNOR:  No, your Honor.
25    THE COURT:  And, the Government?

12

1          MS. CHEN:  No, your Honor.

2          THE COURT:  Okay.  All right.  Thank you very

3 much.

4      Mr. Collins, you're remanded to custody, but you'll be

5 released shortly.

6          THE DEFENDANT:  Thank you.

7      (Proceedings adjourned at 11:43 a.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

13

## CERTIFICATE OF TRANSCRIBER

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

Echo Reporting, Inc., Transcriber
Sunday, September 15, 2024