ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

CHRISTINE CHEN (CABN 327581)
Special Assistant United States Attorney

      450 Golden Gate Avenue, Box 36055
      San Francisco, California 94102-3495
      Telephone: (415) 436-7291
      FAX: (415) 436-7234
      Christine.Chen@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | **CASE NO. 3:21-CR-00463-VC** |
| Plaintiff, | **REQUEST FOR FORM 12 DISMISSAL** |
| v. | Date:   October 30, 2024 |
| ALBERT COLLINS, | Time:   1:00pm |
| Defendant. | Court:  Hon. Vince Chhabria |

At the status hearing on September 4, 2024, the Court requested that the government submit a written request for the dismissal of defendant Albert Collins's alleged supervised release violation petition concerning domestic violence. Dkt. 75. The government took these allegations seriously and investigated with due diligence, but it ultimately determined that it would be unable to prove the allegation under the applicable preponderance standard.

## I.    <u>Procedural Background</u>

On November 14, 2022, this Court sentenced the defendant to fourteen months' imprisonment and three years of supervised release after he pleaded guilty to one count of being a Felon in Possession of a Firearm and Ammunition in violation of 18 U.S.C. § 922(g)(1). Dkts. 39, 44. On November 29, 2022, the defendant began his supervised release term, which is scheduled to expire on November 28,

2025. Dkt. 64 at 1.

On December 22, 2022, the Court took judicial notice of the defendant's first Form 12 violation, concerning his termination from a residential treatment center and testing positive for illicit substances. Dkt. 59.

On July 10, 2024, U.S. Probation filed the instant Form 12. Dkt. 64. The violation alleged that, on July 7, 2024, Oakland police responded to a report of domestic violence. *Id.* The defendant's girlfriend reported that, on June 27, 2024, the defendant had physically assaulted her and she had sustained serious injuries as a result. *Id.* Oakland police officers arrested him on July 7, 2024. *Id.*

The defendant was in custody since his arrest, and, although the Alameda County District Attorney's Office dropped the state charges, he remained in jail due to a miscommunication between local authorities and the U.S. Marshals. The government's understanding is that the defendant was not remanded to the custody of the U.S. Marshals until shortly before his initial appearance in this Court on August 5, 2024. Dkt. 68. The government moved for detention on the instant Form 12 petition. On August 7, 2024, a detention hearing was held (which the defendant's girlfriend attended in support of the defendant's release), the government withdrew its motion for detention, and the Court subsequently ordered the defendant's release from custody. Dkts. 72, 74.

On September 4, 2024, this Court held a status hearing on the alleged Form 12 violation. Dkt. 75. At the hearing, the Court expressed concern that the defendant had multiple criminal convictions involving violence and that it was common for victims to recant in domestic violence cases. The government shares these concerns and, despite its efforts, is unable to proceed on the Form 12 petition.

## II.   <u>Request for Dismissal</u>

The government requests that the domestic violence charge in the supervised release violation petition be dismissed because it would not be able to prove by a preponderance of evidence standard that the defendant was the one who caused injury to his girlfriend on June 27, 2024. A district court may revoke a term of supervised release only if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3); *see also United States v. Perez*, 526 F.3d 543, 547 (9th Cir. 2008) ("Although this is a lower standard than the 'beyond a reasonable doubt' standard required for a criminal conviction, there must still be credible evidence the

1  releasee actually violated the terms of supervised release.").

2    The government investigated the Form 12 allegations, including by reviewing the underlying

3  police report upon which the Form 12 relies and by speaking with the Alameda County District

4  Attorney's Office, the U.S. Probation Office, and the defendant's girlfriend. The police report stated that

5  the defendant's girlfriend had observed the defendant bringing multiple unknown females to their shared

6  apartment on June 27, 2024. He reportedly pushed her against the wall and hit her with a closed fist, but

7  she did not remember what else happened due to losing consciousness. The report further stated that the

8  girlfriend's medical discharge papers were dated June 14, 2024—about two weeks before the alleged

9  domestic violence incident—and that no known witnesses were located. A prosecutor at the Alameda

10  County District Attorney's Office verified no charges were pursued, citing the date of the medical

11  discharge papers preceding the date of the assault, lack of corroborating evidence, and the victim

12  changing her mind about pressing charges. Probation shared that it had contacted the defendant's

13  girlfriend, who stated that it was not the defendant who inflicted her injuries. The government then

14  spoke with the girlfriend as well, and she confirmed what Probation had relayed. She thought that it was

15  the women at the apartment, not the defendant, who had "jumped" her. In fact, she thought that her

16  injuries would have been worse if the defendant had not been there.

17    The government did indeed consider whether the defendant's girlfriend recanted, which domestic

18  violence victims commonly do, due to fear of retaliation, lack of resources, stress of being involved in

19  the legal system, etc., and whether it could meet the preponderance standard without her testimony.

20  However, there appears to be no evidence other than the police report that the defendant was responsible

21  for her injuries, and the police report itself notes the medical report did not match the date of the assault;

22  in fact, it predates the assault. There seems to be substantial uncertainty about the events given that the

23  incident left her unconscious and potentially affected her ability to fully recall the incident. And while

24  the defendant does have a violent and extensive criminal history, he has no prior arrests for domestic

25  violence (even though it is common for abusers to re-abuse). These considerations, combined with the

26  defendant's girlfriend's support of him at his detention hearing and her repeated wish for the defendant

27  not to be prosecuted, leave the government unable to conclude that it can prove that it is more likely than

28  not that the defendant was the one who inflicted injuries on his girlfriend as alleged in the Form 12.

1  In addition, the defendant was in jail for almost a month before he had his initial appearance in

2  this Court due to a miscommunication error. *See* Fed. R. Crim. P. 32.1(a)(1) ("A person held in custody

3  for violating probation or supervised release must be taken without unnecessary delay before a

4  magistrate judge."). It does not appear that the defendant was in federal custody for this period, and the

5  parties have not argued whether this delay was unreasonable or prejudiced the defendant. The right to a

6  prompt hearing on a petition for revocation of supervised release is "not triggered until [the defendant] is

7  taken into *federal* custody on the charge of violating the terms of his supervised release." *Mose v. United*

8  *States*, No. 220CV10158CASKES, 2020 WL 8084251, at *4 (C.D. Cal. Nov. 16, 2020), *report and*

9  *recommendation adopted*, No. 220CV10158CASKES, 2021 WL 90502 (C.D. Cal. Jan. 8, 2021) (citing

10 *Moody v. Daggett*, 429 U.S. 78, 85–88 (1976)). If there is both unreasonable delay and prejudice, the

11 Court may dismiss the charges. *United States v. Santana*, 526 F.3d 1257, 1260 (9th Cir. 2008)

12 (considering "the delay between the date he would have been released from state custody . . . and the

13 date of the initial appearance" and finding that 25-day delay did not call for dismissal); *see also United*

14 *States v. Swanson*, 300 F. App'x 561, 562 (9th Cir. 2008) (rejecting that 108-day delay was

15 unreasonable given that the defendant did not allege the government intentionally delayed his transfer

16 and failed to demonstrate actual prejudice). However, there is no dispute that the defendant should have

17 been transferred out of state custody sooner and that this should be factored into the Court's decision on

18 whether to dismiss the Form 12 violation.

19  Consequently, the government requests that the pending Form 12 charge against the defendant be

20 dismissed in the interest of justice.

21

22 DATED:  October 2, 2024                    Respectfully submitted,

23                                           ISMAIL J. RAMSEY
24                                           United States Attorney

25
                                             ___/s/ Christine Chen_____
26                                           CHRISTINE CHEN
                                             Special Assistant United States Attorney
27

28